IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STEVEN CABASA,<br><br>                Plaintiff,<br><br>   vs.<br><br>CITY AND COUNTY OF HONOLULU, DEPARTMENT OF ENVIRONMENTAL SERVICES; JOHN DOES 1-10; DOE ENTITIES 1-10,<br><br>          Defendants. | CIVIL NO. 14-00080 DKW-RLP<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Steven Cabasa alleges that his employer, the City and County of Honolulu, failed to promote him in 2013 in retaliation for complaints that he had made about a former supervisor some six years earlier. Because Cabasa fails to establish a retaliation claim under 42 U.S.C. § 1983, Hawaii Revised Statutes ("HRS") § 378-2, or under the Hawaii Whistleblowers Protection Act, HRS § 378-62, the City is entitled to summary judgment.

1

# BACKGROUND

In 1987, Cabasa began working for the City as an Assistant Wastewater Treatment Plant Operator in the Department of Environmental Services. Since 1990, he has served as a Wastewater Treatment Plant Operator at various stations throughout Oʻahu. Complaint ¶¶ 9-12.

In 2004, Cabasa applied for a promotion to the position of Wastewater Pumping Operations Supervisor, but the position was awarded to Alan Young. Cabasa alleges that he was more qualified for the position than Young, but that Young "used to go golfing with other supervisors, and they told him that they needed to make him a supervisor to get him on their golf team, as he is a good golfer[.]" Complaint ¶¶ 15-21.

In April 2007, Cabasa attempted to report his "discriminatory/retaliatory non-selection" to the United States Equal Employment Opportunity Commission ("EEOC"), but was told by an investigator that the statute of limitations had passed and that he should instead file a complaint with the City's Department of Human Resources Equal Opportunity Officer Denise Tsukayama. Complaint ¶ 28. Cabasa filed such a complaint on April 13, 2007 but did not limit it to his 2004 non-selection. He also complained that Young, the 2004 selectee, caused a massive spill of raw sewage into the Ala Wai Canal in March 2006. Complaint ¶¶ 21-29.

On April 16, 2007, Tsukayama wrote to Cabasa that the statute of limitations for his 2004 non-selection had expired, and that his report regarding Young's role in the 2006 sewage spill should be referred to the United States Environmental Protection Agency ("EPA"), rather than to Human Resources. Complaint ¶ 30. Cabasa telephoned the EPA, and thereafter spoke to two investigators at his residence. Complaint ¶¶ 31-32. Cabasa alleges that both the City and Young retaliated against him for this report by issuing him verbal warnings and reprimands in 2006 (*i.e.* before his various reports) and then suspending him for 30 days based on a false allegation of unspecified harassment in 2007. Complaint ¶ 37. Cabasa also contends that Young ignored his December 2012 report concerning incorrect pump settings at the City's Beachwalk Wastewater Pumping Station. Complaint ¶¶ 34-36.

In 2013, Cabasa again applied for a promotion to the position of Wastewater Pumping Operations Supervisor, but the position was instead awarded to Lawrence Almazan. The City awarded the promotion based on a competitive written and oral examination, not seniority. The examination was designed to evaluate each applicant's knowledge of the duties and responsibilities of a Wastewater Pump Station Supervisor, knowledge of how pump stations worked, and the applicant's supervisory skills and decision-making abilities. Young Decl. ¶¶ 82-83. The

promotion board interview panel included Young, Herman Ellis and Albert Kim. At the interviews, Kim read the instructions and each of the oral interview questions to the applicants, and the three panel members independently evaluated and scored the applicants using the same generic form.  Young Decl. ¶¶ 90-92. According to Young, each of the three panel members rated each of the three other applicants higher than they did Cabasa—

> 85.  Plaintiff's scores on the oral interview portion of the exam were all in the high 20's, whereas the other candidates scored in the 30's and 40's.  Similarly, Plaintiff scored a 31 on the written examination (19 incorrect answers), whereas the other candidates all scored in the mid 40's.

> 86.  Plaintiffs overall score was 57.5%.  However, Plaintiff needed at least a 70% score to be considered for the position.

> 87.  By contrast, Lawrence Almazan, who was offered the promotion, scored a 92% on the exam.

> 88.  Plaintiff failed to answer two (2) of the questions on the oral interview portion of the exam and one (1) of the questions on the written (multiple choice) part of the exam.

Young Decl. ¶¶ 85-88; *see also* Tsukayama Decl. ¶ 29 ("Plaintiff failed again to achieve the highest score and in fact scored last.").

Cabasa contends that he "was the most qualified applicant for the position, and had been performing the position in a temporary assignment capacity off-and-on for several years."  Complaint ¶ 37(f).  He alleges that his October 2013 "non-

selection was retaliation for engaging in protected activity – filing the complaint with the City's Equal Opportunity Officer Denise Tsukayama, and filing the complaint with the U.S. Environmental Protection Agency[.]" Complaint ¶ 38. According to Cabasa, evidence of retaliation includes the following: (1) Young was a member of the selection committee; (2) Young was one of three members of the oral interview panel, and asked Cabasa about their past conflicts; (3) Almazan had less experience than Cabasa; and (4) Cabasa had been performing the supervisory job on a temporary basis, including from May 2013 to October 2013, after Young was promoted to Chief in May 2013. Complaint ¶ 38. On November 5, 2013, Cabasa filed a complaint with the EEOC and Hawaii Civil Rights Commission ("HCRC") regarding his 2013 non-selection. Complaint ¶ 39.

Cabasa asserts three claims against the City: (1) a First Amendment retaliation claim under 42 U.S.C. § 1983 and the Hawaii State Constitution (Count I); (2) a retaliation claim under HRS § 378-2 (Count II); and (3) a claim under the Hawaii Whistleblowers Protection Act ("HWPA"), HRS § 378-62 (Count III). The City seeks judgment on the pleadings, or in the alternative, summary judgment on all claims.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

### I. Withdrawn Claims

In opposition to the City's motion, Cabasa acknowledges that the City itself is the only Defendant in this matter—rather than the City's Department of Environmental Services. He also withdraws (1) his free speech claim in Count I to the extent it is based on the Hawaii State Constitution, (2) any claim for intentional infliction of emotional distress ("IIED"); and (3) any claim for punitive damages. *See* Mem. in Opp. at 3. Cabasa also asserts that the time-barred incidents included in his complaint are "relevant background facts" and admits that he may not obtain relief from the City for any damages that he suffered directly from those incidents." Mem. in Opp. at 24.

Accordingly, Cabasa clarifies that his retaliation claims are limited to his October 2013 non-selection. *See* Mem. in Opp. at 25 ("Thus, claims not listed in the HCRC/EEOC Charge of Discrimination form are still admissible as

background evidence to put Plaintiff's timely filed claims (non-promotion) into

context.").

## II.   <u>First Amendment Retaliation Claim Under Section 1983 (Count I)</u>

Count I alleges that—

> Plaintiff's conduct was constitutionally protected (i.e.: reports
> that the pump settings at Beachwalk are not according to the
> Plan and could rupture or cause an overflow at a cost of
> millions of dollars to the tax payers once again); and Plaintiff's
> conduct was a substantial or motivating factor in the
> government's decision to take the challenged action (i.e.: Alan
> Young was the person engaged in protected activity to and
> about, and was responsible for Plaintiff's retaliatory non-
> selection.)

Complaint ¶ 45.  Cabasa frames this claim as retaliation for protected speech in

violation of his First Amendment rights, pursuant to 42 U.S.C. § 1983.[1]  Cabasa,

however, cannot maintain a section 1983 claim against the City.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a

violation of a right secured by the Constitution and laws of the United States; and

(2) that the deprivation was committed by a person acting under color of law.  *See*

*West v. Atkins*, 487 U.S. 42, 48 (1988).  Retaliation in the employment context is

---

[1]There is no private right of action permitting claims directly under any constitutional provision;
such claims must be brought pursuant to 42 U.S.C § 1983.  *Azul–Pacifico, Inc. v. Los Angeles*,
973 F.2d 704, 705 (9th Cir. 1992) (A "[p]laintiff has no cause of action directly under the United
States Constitution. . . .  [A] litigant complaining of a violation of a constitutional right must
utilize 42 U.S.C. § 1983.").

actionable under section 1983 when it is in response to a plaintiff's First Amendment activity. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). To state a claim against a government employer for First Amendment retaliation, an employee must show: "(1) that he or she engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or her speech was a substantial or motivating factor for the adverse employment action." *Id.* (internal quotation marks and citations omitted).

Where, as here, the defendant is a municipality or municipal body, the plaintiff has an additional burden. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local government bodies may only be held liable under section 1983 where the constitutional violation was caused by the municipality's policy, custom, or practice. *Id.* at 690-91.

> "A section 1983 plaintiff may establish municipal liability in one of three ways": (1) "a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority"; and (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal citations and quotation marks omitted).

> "Whether a particular official has final policy-making authority is a question of state law." *Id*.

*Turner v. City & Cnty. of San Francisco*, 892 F. Supp. 2d 1188, 1214 (N.D. Cal. 2012); *see also Eng v. Cnty. of Los Angeles*, 737 F. Supp. 2d 1078, 1103-04 (C.D. Cal. 2010) ("[A] plaintiff seeking to impose section 1983 liability on a municipality must premise his or her claim on one of three distinct theories: (1) that a municipal employee was acting pursuant to an expressly adopted official policy; (2) that a municipal employee was acting pursuant to a longstanding practice or custom; or (3) that a municipal employee was acting as a 'final policymaker.'") (citations and some brackets omitted).

Here, Cabasa is not pursuing *Monell* liability based on a "longstanding practice or custom" of the City. Nor is he proceeding on a ratification theory or, more generally, on an approach involving an "official with final policy-making authority." Rather, the sole basis on which Cabasa's *Monell* claim appears to rely[2] is the City's "policy" adopting a competitive selection process relating to the position for which he applied in 2013. *See* Ex. L.

---

[2] Neither Cabasa's complaint, nor his opposition to the City's motion, expressly elaborates on any alleged City "policy" that serves as the basis for his section 1983 *Monell* claim against the City. Nor was counsel any more successful identifying the basis during oral argument. Nonetheless, having reviewed all of Cabasa's submissions, including the supplemental brief (Dkt. No. 51) that he submitted without leave of court, Ex. L to Cabasa's Concise Statement of Facts appears to be the only conceivable "policy" or basis for his *Monell* claim.

There are numerous problems with Cabasa's exclusive reliance on Ex. L. First, the single-page that comprises Ex. L clearly shows that it is an agenda for the interview panel's meetings with the various applicants for the wastewater supervisory position. Among other things, Ex. L advises applicants of the process to come, including how many questions they will face and the point value for each question. It reserves time for the panel to respond to applicants' questions and concludes by wishing each applicant "good luck." In other words, it stretches the bounds of credulity to even consider Ex. L to constitute a City "policy." *See Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)) (A policy is "'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"); *see also Linder v. Bridge*, 2015 WL 1778608 at *6 (N.D. Cal. Apr. 17, 2015) (dismissal appropriate under *Monell*'s policy prong where plaintiff fails to even allege the existence of an official policy of retaliation against whistleblowers").

Second, even if the City's interview agenda somehow amounted to a "policy," that policy must embody the City's "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow." *Bd. of*

*Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 411 (1997).

"Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Id.* at 415; *see also Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999) (quoting *Brown*, 520 U.S. at 410). To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its policy decision would likely result in a constitutional violation. Cabasa makes no such evidentiary showing, nor is it likely that he could. Ex. L reflects the City's desire to utilize a written and oral examination to competitively select its wastewater treatment supervisors. There is no objective or subjective argument or evidence so much as suggesting how such a competitive selection "policy" would likely violate First Amendment rights or how the City was on actual or constructive notice that it even might.

Third, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the

municipality is not held liable solely for the actions of its employee." *See Brown*, 520 U.S. at 405; *see also Dugan v. Cnty. of Los Angeles*, 2012 WL 1161638, at *4 (C.D. Cal. Apr. 9, 2012) ("A plaintiff must prove that the local government's deliberate conduct was the 'moving force' behind the injury alleged. That is, the municipal action must have been taken with the requisite degree of culpability and with a direct causal link to the deprivation of the federal right.") (citing *Brown*, 520 U.S. at 404). In other words, the City's "policy" must have been the "moving force" behind Cabasa's purported injury. Here, Cabasa fails to show the requisite degree of causation or culpability on the part of the City. He offers no evidence that the City's "policy" caused Young to retaliate against him, nor has he adduced any evidence suggesting that Young—or any other City employee[3]—retaliated against him because of the content, or absence of content, of any City "policy." Lacking any such evidence, Cabasa has not established a genuine issue of material fact as to whether the content of the City's "policy" was the "moving force" behind his purported injury. *See, e.g., Gibson v. County of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002) ("[A] plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to

_____

[3]Even Cabasa makes no suggestion that anyone other than Young, such as fellow selection panel members Kim and Ellis, is responsible for retaliation.

commit the constitutional violation."); *Santos ex rel. Santos v. City of Culver City*, 228 Fed. Appx. 655, 659 (9th Cir. 2007) (affirming the district court's grant of summary judgment on a *Monell* claim because there was no evidence of a causal link between city policies and the officer's actions).

For each of these independent reasons, the City is entitled to summary judgment on Count I.

## III.    State Retaliation Claim Under HRS § 378-2 (Count II)

Count II alleges that the City retaliated against Cabasa in violation of HRS § 378-2 because he—

> (a) engaged in protected activity by filing a complaint with Defendant EEO Officer Denise [Tsukayama], a golfing buddy of Wastewater Pumping Operations Supervisor Alan Young; (2) Plaintiff suffered numerous adverse actions after engaging in protected activity; and (3) there is a connection between Plaintiff's protected activity and Defendant's adverse actions[.]

Complaint ¶ 48.  Under HRS § 378-2(a)(2), it is unlawful for any employer "to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part."

The Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Cabasa's state law retaliation

claim.  *See Schefke v. Reliable Collection Agency, Ltd*., 96 Hawai'i 408, 425, 32 P.3d 52, 69 (2001) (When addressing employment discrimination claims under HRS § 378-2, Hawai'i courts look to "interpretation of analogous federal laws by the federal courts for guidance.").  Under this framework, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant took an adverse action against him; and (3) there was a causal link between his involvement in the protected activity and defendant's adverse personnel action.  *Id.*, 96 Hawai'i at 426, 32 P.3d at 70.  Once a plaintiff "establishes a prima facie case of retaliation, the burden shifts to [defendant] to provide a legitimate, nondiscriminatory reason for the adverse employment action."  If the defendant articulates such a reason, the burden shifts back to the plaintiff to show evidence demonstrating that the reason given by the defendant is pretextual.  *Id.*

## A.     Prima Facie Case of Retaliation

Cabasa contends that he was not selected for promotion in 2013 in retaliation for his previous complaints about Young.[4]  He identifies his protected

_____

[4]Cabasa also identifies several "adverse employment actions" that allegedly occurred from 2006 through 2012.  He acknowledges, however, that only his 2013 non-selection was included in his EEOC/HCRC Charge of Discrimination and that the prior events complained of are time-barred.  Accordingly, he concedes that the only "adverse employment action" at issue in the instant case is his 2013 non-promotion.  *See* Mem. in Opp. at 25 ("Thus, claims not listed on the HCRC/EEOC Charge of Discrimination form are still admissible as background evidence to put Plaintiff's timely filed claims (non-promotion) into context.").

activity as occurring "on April 13, 2007 [when he] went to Defendants' Department of Human Resources and filed a complaint with Equal Opportunity Officer Denise Tsukayama alleging discrimination based on race/ethnicity (Filipino) and age (55)." Mem. in Opp. at 19. According to Cabasa, in 2013, "Young, Chief of the Interview Panel, denied Plaintiff . . . promotion to the position of [Wastewater Treatment Pumping Operations] Supervisor – even though Plaintiff was the most qualified applicant for the position, and had been performing the position in a temporary assignment capacity off-and-on for several years." Mem. in Opp. at 21.

Cabasa does not sufficiently raise a genuine issue of fact regarding the causal link between his protected activity in 2007 and his non-promotion *over six years later* in 2013. Courts have consistently held that much shorter periods do not satisfy a temporal proximity between protected activity and the adverse action. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (noting that those cases that accept mere temporal proximity as sufficient evidence of causality to establish a prima facie case uniformly hold that temporal proximity must be "very close"); *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003) (refusing to draw an inference of causation when there was a nine-month period between the employer's knowledge of protected activity and an adverse employment action);

*Tatum v. Schwartz*, 405 Fed. Appx. 169, 171 (9th Cir. 2010) ("Temporal proximity of one year--measured from the date of [plaintiff's] complaint until the date of her work assignment--is insufficient to establish an inference of retaliation without additional evidence.").  Accordingly, the temporal proximity in this case, six years between Cabasa's April 13, 2007 internal complaint and his October 2013 non-promotion, is insufficient to establish an inference of retaliation.

Temporal proximity is also not the sole measuring stick.  The Court notes that, "it is causation, and not temporal proximity alone, which is an element of a plaintiff's retaliation claim." *Blanchard v. Lahood*, 461 Fed. Appx. 542, 544 (9th Cir. 2011) (citing *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894-95 (9th Cir. 2005)).  The causation element requires evidence that the "employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  Yet, here, there are only bald assertions and speculation from Cabasa that the promotion board members—Young, Ellis, and Kim—had any knowledge of Cabasa's 2007 protected activity.  All three members of the selection panel are unambiguously clear that they had no knowledge of Cabasa's 2007 complaint to Tsukayama.  *See* Young Decl. ¶¶ 37-38; Ellis Decl. ¶ 24; Kim Decl. ¶¶ 19-20.  In the face of these sworn declarations, Cabasa asserts that—

> Tsukayama denies telling anyone about Plaintiff's
> discrimination complaint, but that is a question of fact for a jury
> because immediately after Plaintiff filed the discrimination
> complaint with her the retaliation began and continued until
> Plaintiff filed a retaliation complaint with the EEOC/HCRC on
> November 5, 2013.  Plaintiff alleges in his lawsuit that he asked
> Tsukayama if she knew Supervisor Alan Young, who got the
> promotion instead of Plaintiff, and she replied that she does
> know Young because she "golfs" with him.  Thus it is a
> question of fact for a jury as to whether or not she told Young.

Mem. in Opp. at 23 (citations omitted).[5]  However, when asked at his deposition:

"How did Allan Young know that you had reported him for causing the 2006 Ala

Wai spill?", Cabasa responded: "I don't know."  City Ex. A (3/27/15 Cabasa Dep.

Tr.) at 77.

Even construing the facts in the light most favorable to Cabasa, whether or

not Tsukayama golfed with Young does not establish causation in this matter, or

that she told Young about Cabasa's 2007 complaint.  Conclusory speculation does

not trump fact.  Moreover, Cabasa does not dispute that when Young was

promoted to Chief in or around May 2013, Young appointed Cabasa on a

---

[5]*But see* Young Decl. ¶ 28 ("I do not golf, nor have I ever golfed with Equal Opportunity Officer
Denise Tsukayama."); Tsukayama Decl. ¶¶ 13-14 ("In actuality, I had only heard of Mr. Young
at the time that Plaintiff and I met and I have never played a round of golf in my life.").

temporary assignment to Young's former supervisory position, which Cabasa accepted.[6]

Because there is no evidence that the City's alleged discriminating official knew of Cabasa's protected activity prior to Cabasa's 2013 non-selection, and because the non-selection occurred temporally distant from Cabasa's protected activity, Cabasa has failed to establish a prima facie claim of retaliation sufficient to withstand summary judgment. *See Jespersen v. Harrah's Operating Co*., 444 F.3d 1104, 1110-11 (9th Cir. 2006).

## B. The City's Legitimate, Non-Discriminatory Reasons

Even assuming that Cabasa could establish a prima facie claim of retaliation, the City has provided a legitimate, non-retaliatory reason for Cabasa's non-selection: he performed poorly on the competitive examination and interview relative to the other three applicants. There is no dispute that the City administered a promotional examination, designed to test the applicants' knowledge of the duties and responsibilities of the supervisory position. Each of the three panel

---

[6]In fact, Cabasa continuously points to this temporary appointment by Young as evidence that he should have been the presumptive supervisory selectee in 2013. *See, e.g*., Complaint ¶ 37(f); Cabasa CSF ¶¶ 15, 23 ("Young did not 'offer' Pl the T/A Supervisor position because he chose to, Def was required to place Pl in the R/A Supervisor position due to seniority. . . . Pl did not do any specific preparation per se, but PL did have 26 years working for Def with Def's wastewater treatment pumps, as well as experience working as the T/A Supervisor before and after Young was promoted."); Ex. M (11/12/98 Evaluation).

members—including two of whom are not even alleged to have discriminated against Cabasa—*consistently* scored the four applicants, and Cabasa *uniformly* received the lowest scores.  *See* City Exs. L & M (Examination Score Sheets).  In fact, Cabasa admitted that he did not prepare for the examination and did not answer two of the ten oral interview questions, knowing that the interview comprised 75 percent of the examination score.  *See* City Ex. A (3/27/15 Cabasa Dep. Tr.) at 96-100;  *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) ("[T]he employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'");  *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002) (noting that it does not matter if the proffered justification for an employment action was "foolish or trivial or even baseless");  *Eng v. Cnty. of Los Angeles*, 737 F. Supp. 2d 1078, 1095 (C.D. Cal. 2010) ("Defendants presented irrefutable evidence that Plaintiff was not promoted to a DDA IV position in 2005 because his objective written score rendered him ineligible . . . .  Plaintiff not only does not, but indeed cannot create a triable issue of material fact as to whether any of the Defendants' actions . . . might have contributed to the score he received on the 2005 DDA IV examination, and his resulting ineligibility for promotion at that time.").  Having

articulated legitimate reasons for Cabasa's non-selection, the burden shifts back to Cabasa.

### C.     Cabasa Does Not Establish Pretext

If an employer provides a legitimate explanation for the challenged decision, the burden shifts back to the plaintiff to show that the employer's explanation is merely a pretext for impermissible discrimination or retaliation.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  The plaintiff needs to do more than merely deny the credibility of the defendant's proffered reasons.  *See Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).  To survive summary judgment, the plaintiff must offer either direct or specific and substantial circumstantial evidence of retaliatory motive.  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003).  Cabasa fails to do so here.

Cabasa first attempts to demonstrate pretext, asserting that the City has failed to provide the "answer key" to the written, multiple choice portion of the supervisory examination.  Because the multiple choice portion of the test is subject to an objective standard, and each of the applicants' tests is part of the transparent record in this matter (*see* City Ex. M), it is evident that none of the other applicants was graded any differently than Cabasa and that the absence of an "answer key" is a red herring that falls far short of demonstrating pretext.

To the extent Cabasa argues that the interview portion of the examination was "subjective" and that this is where Young was able to hide his discrimination, Cabasa fails to account for the uniformly consistent scores among all panel members on the preprinted grading forms, that were awarded independently by the panelists, and who did not consult one another or discuss the applicants during the interviews. *See* City Exs. B, C, D & L (Panel Score Sheets). On the record before the Court, there is insufficient evidence to support a claim of bias by Young based on the interview scoring. Cabasa offers only speculation and argument to the contrary.

Cabasa also asserts that Young improperly "goaded" him during the interview, forcing him to explain the circumstances of the 2006 sewage spill, and "sabotaging" his interview. *See* Cabasa Decl. ¶¶ 8-9. The Court first notes that Cabasa's account in his declaration varies from his deposition testimony that it was panel member Kim who asked the question, "describe a difficult situation you had with a supervisor and how you handled the situation," and that Cabasa answered that he had not had any problems. City Ex. A (3/27/15 Dep. Tr.) at 103. In his declaration, Cabasa insists that—

> Young goaded me during the interview asking me if I ever had
> any conflict with my supervisor (Young). When I hesitated to
> answer, Young prompted me "answer that question Steve,
> answer that question" thus forcing me to explain the whole

matter of the 3/24/2006 sewage spill and that it was caused by Young's wrongful actions, during my promotional interview. Thus Young had every "motive" to retaliate against me by subjecting me to unjust disciplinary actions and sabotaging my 2013 promotion to supervisor.

Cabasa Decl. ¶ 9. Cabasa's argument, however, amounts to just that--argument. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (plaintiff's "subjective personal judgments . . . do not raise a genuine issue of material fact"). During the interview, Cabasa also discussed his conflict with Young regarding a December 2012 disagreement over the pump settings at the Waikiki Beachwalk Pump Station. Notwithstanding this disagreement, all three panel members, including Young, scored Cabasa's response as a five—the highest score possible. *See* Young Decl. ¶¶ 102-105; Exs. C, D & L. Nothing in the record relating to the oral interview demonstrates a question of fact regarding a retaliatory motive or other evidence of pretext.

Cabasa argues that several of the time-barred adverse actions allegedly taken against him were initiated by Young and evidence bias or motive, including (1) a written warning on December 1, 2010 for parking his car on company property, and (2) an April 16, 2012 written reprimand for insubordination. *See* Mem. in Opp. at 20-21; Cabasa Decl. ¶¶ 13-14, 22. With respect to the December 1, 2010 warning, Cabasa does not deny that his personal car was improperly parked on

company property during non-working hours, and that it was Lori Moniz who had his car towed, rather than Young. City Ex. A (3/27/15 Cabasa Dep. Tr.) at 89-90. The week prior to the towing, Young had given both Cabasa and Pump Station Operator Sylvester Torres verbal warnings about violating the parking policy. Young Decl. ¶¶ 63-65. In other words, Young did not have Cabasa's car towed and did not treat him any differently than other employees with respect to violations of the parking policy. As to the second incident, resulting in an April 16, 2012 reprimand, Cabasa acknowledges that he disobeyed a direct order from Young to open a gate valve at the Kahala Pumping Station. He explained that he disobeyed Young's order "for safety, and I was afraid that he was going to make a spill on the station." City Ex. A (3/27/15 Cabasa Dep. Tr.) at 93. The April 16, 2012 Kahala Pumping Station incident was investigated by the City, *see* City Ex. A (3/27/15 Cabasa Dep. Tr.) at 92-94, and the reprimand was issued by a panel that included Albert Kim and Windward District Supervisor Kurt Williams, not by Young.[7] Kim Decl.¶ 26-34. At no time during the investigation of the Kahala

---

[7]The investigative panel interviewed Cabasa, Young, and Pump Station Operators Sylvester Torres and Donald Bittick, who were present during the incident, and it also conducted a site inspection. All of the witnesses, including Cabasa, agreed that Cabasa refused to listen to the work plan and refused to participate in the work assignment. The investigators concluded that Cabasa willfully refused to complete his work assignment, and had Cabasa listened to the work plan provided by Young, he would have known that safety precautions were in place to address his concerns. *See* Kim Decl.¶¶ 27-33; Young Decl. ¶¶ 76-78.

Pumping Station incident did Cabasa indicate that he believed it was in retaliation for anything.  Kim Decl. ¶ 36.  Even considering these time-barred incidents of alleged retaliatory conduct, and viewing them in the light most favorable to Cabasa, they do not create genuine issues of material fact on the issue of pretext.

There is no dispute that Cabasa believes he should have been promoted—regardless of how poorly he did on the examination—because Almazan had comparatively less experience.  City Ex. A (3/27/15 Dep. Tr.) at 104.  Cabasa's opinion, however, does not demonstrate that the City's reasons for awarding the position to the highest scoring candidate, Almazan, is pretextual.  *See Green v. Maricopa County Cmty. College Sch. Dist.*, 265 F. Supp. 2d 1110, 1128 (D. Ariz. 2003) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.").

Upon a careful and thorough review of the record, the Court concludes that because Cabasa has not established a prima facie claim of retaliation, and has not offered sufficient evidence of pretext that calls into question the City's proferred reason for selecting Almazan in 2013, the City's motion for summary judgment is GRANTED as to Count II.

## IV.   HWPA Claim Under HRS § 378-62 (Count III)

Count III is entitled "Hawaii Whistleblowers Protection Act , s378-62 HRS," but the allegations in the Count describe City conduct that "constitute[s] intentional infliction of emotional distress."  Complaint ¶ 51.  Cabasa contends that he has properly alleged a violation of HRS § 378-62 because he engaged in protected activity when he reported the cause of the March 24, 2006 sewage spill to City employees (including Young and Tsukayama), the EEOC, and EPA investigators throughout 2006 and 2007.  He contends that he was subject to "adverse actions for false allegations" beginning in 2006 and continuing until the October 8, 2013 denial of promotion.  Suppl. Mem. in Opp. at 5.

Under the HWPA, it is unlawful for an employer to discriminate against an employee because the employee "reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of [a] law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States."  HRS § 378-62(1)(A).  To establish a prima facie claim of retaliation under the HWPA, Cabasa must prove that (1) he engaged in a protected activity, (2) he was subjected to an adverse employment action, and (3) the adverse employment action resulted

because of the participation in the protected activity.  *See Cambon v. Starwood Vacation Ownership, Inc.*, 945 F. Supp. 2d 1133, 1142-43 (D. Haw. 2013); *Griffin v. JTSI, Inc.*, 654 F. Supp. 2d 1122, 1130-32 (D. Haw. 2008) (citing *Crosby v. State Dep't of Budget & Fin.*, 76 Hawaiʻi 332, 876 P.2d 1300, 1310 (1994)). Cabasa must show that his protected activity was a "substantial or motivating factor" for the adverse action.  *Griffin*, 654 F. Supp. 2d at 1131-32.  A court may infer a causal connection between a protected activity and a retaliatory action when there is proximity in time between the two.  *Id.*

As discussed above, Cabasa fails to demonstrate the required causal link between his protected activity in 2006 and 2007 and his non-promotion in 2013. First, there is no evidence outside of Cabasa's self-serving statements in his declaration that any member of the selection panel knew that he reported a violation of state or federal law to Tsukayama in 2007.  Without such knowledge by the decisionmakers, any whistleblowing by Cabasa could not have constituted a substantial or motivating factor in any employment actions.  Second, even considering the other complained of adverse actions that are time-barred,[8] Cabasa creates no triable issue that his earlier whistleblowing was a "substantial or

---

[8]HWPA claims must be brought within two years.  *See* HRS § 378-63 ("A person who alleges a violation of this part may bring a civil action for appropriate injunctive relief, or actual damages, or both within two years after the occurrence of the alleged violation of this part.").

motivating" factor in the selection of Almazan. Rather, the record establishes that Cabasa's non-promotion "would have occurred regardless of the protected activity," based on his across-the-board low scores on the written examination and interview. *Crosby*, 876 P.2d at 1310 (quoting *NLRB v. Howard Elec. Co.,* 873 F.2d 1287, 1290 (9th Cir. 1990)).

The Court notes that "an aggrieved employee always retains the ultimate burden of proof" in a retaliation case under the HWPA. *Crosby*, 876 P.2d at 1310 (citing *Sonicraft, Inc. v. NLRB*, 905 F.2d 146, 150 (7th Cir. 1990)). Cabasa presents insufficient evidence to create a genuine issue of material fact as to whether his reporting was a substantial or motivating factor in, or had a causal link to, any adverse employment action that may have been taken against him—in short, he fails to meet his burden in opposition to summary judgment. Accordingly, the City's motion is GRANTED as to Count III.

// //

// //

// //

# **CONCLUSION**

On the basis of the foregoing, the Court GRANTS Defendant City and County of Honolulu's Motion for Summary Judgment on all claims.

IT IS SO ORDERED.

DATED: July 27, 2015 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

*Steven Cabasa v. City & County of Honolulu, et al.;*
Civil No. 14-00080 DKW-RLP; **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**